UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARSENIO DECORD STEWART,

        Plaintiff,

v.                                 Case No. 3:22-cv-932-BJD-SJH

LONDON M. BOONE, et al.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff, Arsenio Decord Stewart, an inmate of the Florida Department of Corrections (FDC), is proceeding pro se on an Amended Complaint for Violation of Civil Rights (Doc. 13; Am. Compl.). The Court previously denied the five named Defendants' motions to dismiss, but *sua sponte* dismissed the claim(s) against the Doe Defendant. *See* Order (Doc. 48). Against the five named Defendants (three corrections officers, the Warden, and a nurse),[1] Plaintiff asserts the following claims: an Eighth Amendment excessive force or sexual assault claim against Defendant Boone (for assaulting and unprofessionally restraining Plaintiff and for grinding his penis against

---

[1] Collectively, the Warden and corrections officers will be referred to as "FDC Defendants."

Plaintiff's buttocks); an Eighth Amendment excessive force claim against Defendants Montague and Norton (for kicking Plaintiff when he was fully restrained and lying on the ground); an Eighth Amendment failure to protect claim against Warden Polk (for permitting Defendant Boone to interact with Plaintiff during the pendency of a PREA[2] investigation); and an Eighth Amendment deliberate indifference claim against Defendant Nurse Selph (for not treating Plaintiff's rib injuries). *See* Am. Compl. at 8, 10–12.

Before the Court are (1) Defendant Selph's Motion for Summary Judgment (Doc. 76; Selph Mot.), which Plaintiff opposes (Doc. 81; Pl. Selph Resp.), and (2) the FDC Defendants' Motion for Summary Judgment (Doc. 78; FDC Mot.), which Plaintiff opposes (Doc. 84; Pl. FDC Resp.).[3]

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the

---

[2] "PREA" stands for Prison Rape Elimination Act.

[3] Plaintiff filed two responses to the FDC Defendants' Motion (Docs. 82, 84). The first response includes an exhibit (Doc. 82-1), but the "Amended Response" does not. The exhibit filed with the original response is duplicative of other records already on the docket.

nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is

3

appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Relevant Facts

Plaintiff's claims stem from a use-of-force incident that occurred at Hamilton Correctional Institution (HCI). Plaintiff's allegations are summarized in the Court's Order on Defendants' motions to dismiss. *See* Order (Doc. 48) at 1–3, 10. For purposes of summary judgment, the facts are drawn from the exhibits offered in support of Defendant Selph's Motion (Docs. 76-1 through 76-12; Selph Exs. 1–12), the FDC Defendants' Motion (Docs. 78-1 through 78-4; FDC Exs. A–D), and Plaintiff's Response to Defendant Selph's Motion (Doc. 81-1; Pl. Ex.).[4] Additionally, the FDC Defendants have submitted video evidence under seal.[5]

---

[4] Except for one grievance that is not material to the issues before the Court, the documents Plaintiff filed with his original response to the FDC's Motion are the same as those he filed in response to Defendant Selph's Motion. The Court will cite Plaintiff's exhibit as the one docketed with his Response to Defendant Selph's Motion (Doc. 81-1).

[5] Footage from fixed wing cameras was filed under seal on a flash drive. The Court will cite the flash drive as "Video Ex." There is reference to a hand-held camera in FDC reports, *see* FDC Ex. D at 1, 8, but no footage from a hand-held camera was provided.

### A. Force Incident

According to FDC records, including incident reports, disciplinary reports, grievance responses, and medical records, Defendant Boone found a homemade weapon in Plaintiff's personal property while conducting a cell search on November 11, 2021. *See* FDC Ex. C at 3, 7; FDC Ex. D at 2. Defendant Boone directed Plaintiff to "turn around and submit to wrist-restraints," but Plaintiff refused, became argumentative, and "took an aggressive stance." *See* FDC Ex. C at 7. Thus, Defendant Boone used "chemical force" to gain Plaintiff's compliance. *See id. See also* FDC Ex. D at 2, 5. The chemical agents did not have the "desired effect," in part because Plaintiff backed away to "elude" the chemicals. *See* FDC Ex. C at 7. Plaintiff ran down the hall, and Defendant Boone pursued him. *Id.* at 2, 5, 8. When Defendant Boone advanced toward Plaintiff to secure him, Plaintiff "struck [Defendant] Boone in his face and upper torso." *Id.* Both fell to the floor, with Plaintiff landing on top of Defendant Boone. *Id.* at 2, 5. A non-Defendant, Officer McBurrough, pulled Plaintiff off Defendant Boone and held him face-down on the floor until other officers arrived to assist. *Id.* at 2, 5, 9.

Plaintiff refused to stand, so officers executed a "four-man carry" to bring Plaintiff for a decontamination shower. *Id.* at 2, 5. Defendant Boone did not participate in the four-man carry, but Defendant Norton did, "maintaining a

hold of [Plaintiff's] left leg." *Id.* at 2, 5. According to Defendant Boone's force report, Defendant Montague was the officer in charge when the incident occurred and gave the "lead-in statement" for the handheld camera. *Id.* at 8. Defendant Boone sustained injuries from the incident, and Plaintiff incurred a disciplinary charge for battery on a correctional officer. *Id.* at 1–2, 5, 9, 11. *See also* FDC Ex. C at 5, 7. He also was "placed on Heightened Security as a result of his assaultive actions towards staff." *See* FDC Ex. D at 6.

In his Amended Complaint, Plaintiff concedes he disobeyed Defendant Boone's command to "cuff up," ran from Boone, and physically battered Boone. *See* Am. Compl. at 10. However, he claims he did so because Defendant Boone falsified having found a weapon in retaliation for Plaintiff having made a PREA complaint against Boone. *Id.* at 10, 14.[6] *Id.* at 10–11. Plaintiff alleges Defendant Boone violated his Eighth Amendment rights by "unprofessional[ly] restrain[ing] . . . him," apparently by "put[ting him] in a choke-hold" and pressing "his hardened penis . . . against [his] butt[ocks]." *Id.* at 4, 8, 10. He asserts an Eighth Amendment claim against Defendants Montague and

---

[6] The Court initially construed Plaintiff's allegations as an attempt to assert a retaliation claim against Defendant Boone, *see* Order (Doc. 48), but upon closer review, it does not appear he does so. He identifies only Eighth Amendment claims stemming from his allegations, *see* Am. Compl. at 4, and he does not reference a purported retaliation claim in his Response to the FDC's Motion, *see generally* Pl. FDC Resp.

Norton for allegedly "kick[ing him] several times" while he was fully restrained on the ground. *Id.* at 11. Plaintiff alleges Warden Polk "failed to prevent" the alleged sexual assault by not separating him from Defendant Boone knowing that Plaintiff had made a PREA complaint against Boone. *Id.* at 11–12, 15.

### B. Plaintiff's Alleged Injuries

Defendant Selph, a registered nurse, evaluated Plaintiff immediately after the incident. *See* Selph Exs. 1, 2. According to the relevant medical records (a post-use-of-force assessment and body diagram), "[no] acute injury or distress [was] noted." *See id.* Plaintiff, on the other hand, alleges he sustained visible rib injuries, which Defendant Selph refused to treat. *See* Am. Compl. at 11. On November 29, 2021, Plaintiff submitted an informal grievance complaining that "medical . . . refus[ed] to give [him] medical attention [on] November 11, 2021 after [he] informed the medical person[n]el that [his] neck and left rib cage [were] injured due to being ass[a]ulted by sercurity [sic] . . . ." Pl. Ex. at 1. The grievance responder said that Plaintiff's "[r]ecords" noted he had an "acute injury . . . in the rib area" and that he could access sick-call if warranted. *Id.* (December 2, 2021 Grievance Response). Plaintiff was seen in medical at least twice after the incident but did not complain about injuries to his neck or ribs. *See* Selph Exs. 6, 7.

7

## IV. Defendant Selph's Motion

Defendant Selph argues Plaintiff did not have a serious medical need following the force incident on November 11, 2021, and even if Plaintiff did, Defendant Selph did not know about it and therefore could not have been deliberately indifferent. *See* Selph Mot. at 6–8. He argues that the medical records show he evaluated Plaintiff per protocol following the force incident and no injuries were noted. *Id.* at 7–9. He further argues the records demonstrate that Plaintiff never "sought any further treatment for any injuries resulting from [the incident]," and Plaintiff was transferred to Florida State Prison two months later, in January 2022. *Id.* at 3, 9–10.

In his Response, Plaintiff first complains that Defendant Selph's Motion was filed late. *See* Pl. Selph Resp. at 1. It was not. The dispositive motion deadline was September 3, 2024, *see* Order (Doc. 73), and that is when Defendant Selph filed his Motion, *see* Selph Mot. at 11. With respect to the substantive claim, Plaintiff relies primarily on the December 2, 2021 Grievance Response, in which a prison official noted that a review of his records showed he had an "acute injury . . . in the rib area." *See* Pl. Ex. at 1. Plaintiff also claims that the body diagram of his post-use-of-force exam was "tampered with," because on the body diagram, there are circles around the rib area, which is where he claims to have had pain. *Id.* at 3. He contends, "That circle indicates

8

where an injury is at, and mine was in that area." *Id.* He further claims the other notations on the body diagram were "added" after the fact, including a check mark in the box that says, "No injury identified," and a handwritten note that says, "[No] acute injury noted." *See* Selph Ex. 2.

Plaintiff complains that Defendant Selph's refusal to give him pain medication or ice caused him to suffer in pain and speculates the lack of treatment "*may* be the reason [he is] permanently disfigured." *See* Pl. Selph Resp. at 4–5. Plaintiff provides no evidence of permanent disfigurement. He does not mention any neck injury in his Response. *See generally id.*

In the prison setting, "[t]he knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). *See also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[A] prison inmate has the right under the Eighth Amendment to be free from deliberate indifference to serious physical or psychiatric needs."). To succeed on a deliberate indifference claim, a plaintiff first must prove that he had an "objectively serious medical need," which the Eleventh Circuit defines as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee Cnty.*, 510

F.3d 1312, 1326 (11th Cir. 2007). Under this standard, a "serious medical need" is one that, "if left unattended, poses a substantial risk of serious harm." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

Even if a plaintiff can demonstrate he had a serious medical need, "the deliberate-indifference standard sets an appropriately high bar." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020). A deliberate indifference claim requires a plaintiff to show the defendant acted with "subjective recklessness as used in the criminal law." *Wade v. McDade,* 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting in part *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Under the "subjective recklessness" standard, a prisoner-plaintiff "must show that the defendant official was subjectively aware that his own conduct—[] his own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* at 1258, 1262. Establishing negligence is insufficient. *See, e.g., Farmer*, 511 U.S. at 835 ("[Deliberate indifference describes a state of mind more blameworthy than negligence."); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) ("It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause …." (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))).

Defendant Selph carries his burden to demonstrate Plaintiff did not have a serious medical need of which he (Selph) was aware. A physical examination

revealed no acute injury, and Defendant Selph documented that Plaintiff had no complaints of pain. *See* Selph Exs. 1, 2. A non-Defendant medical provider reviewed and signed off on the physical evaluation. *See* Selph Ex. 1.

Contrary to Plaintiff's contention, there is no "genuine issue of material fact" whether he sustained an injury. *See* Pl. Selph Resp. at 2. He provides no contradicting medical evidence showing he sustained an injury to his ribs from the use-of-force incident, and his reliance on the December 2, 2021 Grievance Response is insufficient. Although the grievance responder indeed noted that a review of Plaintiff's records showed he had an "acute injury . . . in the rib area," the grievance responder does not appear to have been a medical provider but rather was a Medical Records Custodian, or "MCR." *See* Pl. Ex. at 1. In other words, the December 2, 2021 Grievance Response is not evidence of an injury but constitutes a "mere scintilla of evidence," which is insufficient to overcome summary judgment. *See generally Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) ("[T]o defeat a motion for summary judgment, [the non-moving party] must adduce specific evidence from which a jury could reasonably find in his favor; '[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient.'" (second and third alterations in original) (quoting *Anderson*, 477 U.S. at 252)).

Importantly, Plaintiff does not produce the purported records the grievance responder reviewed, and the record of the post-use-of-force examination indisputably shows there was "no" acute injury observed or reported, suggesting the grievance responder misread the record or was referring to a different record that no party has disclosed.[7] On the post-use-of-force examination record, the word "no" was written as a symbol: a circle with a slash through it. Similarly, the body diagram does not contain "circles" indicating areas of injury, as Plaintiff contends. Rather the "circles" are larger versions of the abbreviation for "no"—each has a slash through it, indicating there was no physical injury observed on any portion of Plaintiff's body.

In short, there is no evidence showing Plaintiff had a serious medical need of which Defendant Selph was aware on November 11, 2021. Even if Defendant Selph performed a perfunctory, incomplete, or inadequate medical assessment, such conduct amounts to negligence, not deliberate indifference. Moreover, assuming Plaintiff told Defendant Selph he was in pain, and Defendant Selph refused to give him pain medication or ice, Plaintiff's claim

---

[7] In his response to Defendant Selph's motion to dismiss, Plaintiff primarily relied on the December 2, 2021 Grievance Response to demonstrate he stated a plausible claim against Defendant Selph. *See* Order (Doc. 48) at 10–11. In ruling on Defendant Selph's motion to dismiss, the Court had to accept Plaintiff's allegations as true, including that he had sustained an injury. However, on summary judgment, a different standard applies. Plaintiff may no longer rely on the unsubstantiated allegations in his Amended Complaint. *See Celotex Corp.*, 477 U.S. at 324.

amounts to no more than a dispute about medical treatment. Accordingly, Defendant Selph's Motion will be granted.

## V. FDC Defendants' Motion

The FDC Defendants invoke qualified immunity, arguing they were acting in the scope of their discretionary duties at the relevant times, and Plaintiff points to no evidence showing they violated his constitutional rights. *See* FDC Mot. at 9–10. Defendants argue a use of force was warranted because Plaintiff disobeyed lawful orders and assaulted Defendant Boone. *Id.* at 12–13. Additionally, they note that Plaintiff's unsupported allegation that Defendant Boone lied about finding a weapon in retribution for Plaintiff's PREA complaint against him is disputed by the records, which show Plaintiff did not have an active PREA complaint against Defendant Boone at the time but rather filed one after the incident. *Id.* at 7, 12.

In his Response, Plaintiff notes that Defendants have not addressed his specific allegations regarding Defendants Montague and Norton "attack[ing]" him or that Defendant Boone "press[ed] his hardened penis against [his] buttocks." *See* Pl. FDC Resp. at 1. He also says the evidence of the date on which he made his PREA complaint against Defendant Boone "has clearly been tampered with"; he properly exhausted his administrative remedies (a point Defendants do not raise or dispute); and Defendants are not entitled to

13

qualified immunity because the video evidence shows the "sexual assault" as well as "Defendants Montague and Norton . . . deliberately violating Chapter 33-602.210(4)(b)3 and 33-602.210(4)(c)2,"[8] and the December 2, 2021 Grievance Response "support[s] that [he] arrived to the post use of force medical exam with a severe rib injury." *Id.* at 2–4.

Prison officials sued in their individual capacities are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. *Id.* In other words, even if a prison official makes a decision that is later found to be

---

[8] Chapter 33-602.210 of the Florida Administrative Code (FAC) governs "Use[s] of Force" by prison officials. Subsection (4)(b)3 provides, "Inmates shall not be carried, dragged, or lifted by restraint devices," and subsection (4)(c)2 governs the protocol for video recording reactionary uses of force. It is unclear why Plaintiff cites these provisions of the FAC in his Response to the FDC Defendants' Motion. He does not describe any facts suggesting any Defendant violated these provisions. Regardless, a prison official's violation of state law or FDC policies or procedures is not a constitutional violation actionable under 42 U.S.C. § 1983. *See Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) ("[T]he procedural requirements set out in [a state] regulation are not themselves constitutional mandates.").

constitutionally deficient, the official is entitled to qualified immunity if the decision was based on a reasonable misapprehension of the law. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was performing discretionary duties at the relevant times. *Alcocer*, 906 F.3d at 951. Plaintiff does not dispute that Defendants were acting within the scope of their discretionary duties when the incident occurred. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate each Defendant violated a constitutional right that was clearly established at the time. *Id.* ("Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when

necessary. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts must balance an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. *Ort*, 813 F.2d at 321–22.

A prisoner against whom force is used to restore order demonstrates an Eighth Amendment violation "*only* if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" *Williams*, 943 F.2d at 1575. Officers may use chemical agents to quell a disturbance so long as a valid penological reason supports its use and it is not used in "quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1310 (11th Cir. 2010) ("[T]he use of chemical agents on recalcitrant prisoners is not per se unconstitutional." (quoting in part *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984))). *See also Sconiers v. Lockhart*, 946 F.3d 1256, 1264 (11th Cir. 2020) (acknowledging "pepper-spray" may be used to subdue an inmate when penologically necessary); *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates.").

Regardless of the type of force involved, whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires consideration of the "*Whitley* factors": the need for force; the extent of force used in relation to the prisoner's conduct; the threat of harm the prisoner posed to others; whether the officer tried to "temper the severity of a forceful response"; and the injuries inflicted. *See Williams*, 943 F.2d at 1575; *Whitley*, 475 U.S. at 321. *See also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). A prisoner's lack of an injury is not dispositive but can be "evidence of the kind or degree of force that was used by [an] officer." *Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) (citing *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021)).

In applying the *Whitley* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). Corrections officials are not required to "convince every inmate that their orders are reasonable and well-thought out," and "[c]ertainly . . . are not required to do so where an inmate repeatedly fails to follow those orders." *Danley*, 540 F.3d at 1307. As such, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. A case should not go to the

jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.*

The *Whitley* factors do not apply when a prisoner claims an officer sexually abused him because "[a] sexual assault necessarily violates the Eighth Amendment." *See DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021) (discussing *Sconiers*, 946 F.3d at 1259). "In order for a prisoner to meet his burden on all elements of his Eighth Amendment claim, then, he need only show that the prison official committed a sexual assault." *Id.* A sexual assault occurs "when the prison official . . . engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id.*

Plaintiff alleges the following conduct violated his Eighth Amendment rights: Defendant Boone "press[ed] his hardened penis against [his] buttocks" and lied about finding a knife in his personal property, apparently as an excuse to punish him; and Defendants Montague and Norton kicked him while he was restrained. *See* Am. Compl. at 10–12; Pl. FDC Resp. at 2–4. His Eighth Amendment failure-to-protect claim against Warden Polk is dependent on his underlying claim of excessive force or sexual assault against Defendant Boone. *See* Am. Compl. at 11–12; Pl. FDC Resp. at 3.

18

As to the claim against Defendant Boone, according to the clear, reliable video evidence and Plaintiff's own allegations, Plaintiff's conduct prompted a reactionary use of force. When Defendant Boone allegedly discovered a weapon in Plaintiff's belongings, Plaintiff and his cellmate were standing unattended and unsecured in the hallway while Defendant Boone was inside their cell and a third inmate (an orderly) was cleaning. *See* Video Ex. Defendant Boone ordered Plaintiff to submit to hand restraints, and Plaintiff admittedly refused to comply, ran down the hall, and struck Defendant Boone, causing them both to fall to the floor. *See* Am. Compl. at 10. *See also* Video Ex.

Even if Defendant Boone lied about finding a knife in Plaintiff's belongings, Plaintiff does not have a constitutional right to be free from false accusations by a prison official. *See Wagner v. Smith*, No. 5:06-cv-11-MCR-EMT, 2006 WL 2482782, at *3 (N.D. Fla. Aug. 25, 2006) ("[T]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation."). According to the undisputed evidence, Plaintiff disobeyed Defendant Boone's order and ran away from him when he was the only officer on the wing with Plaintiff and two other inmates who also were out of their cells and not in handcuffs. *See* Video Ex. Thus, under the *Whitley* factors, a reactionary use of force was justified, and the force used was minimal and tempered—a brief spray of chemical agents that mostly missed Plaintiff

19

and which Plaintiff had an opportunity to wash off in a decontamination shower.

Although a sexual assault constitutes an Eighth Amendment violation if proven, the video evidence shows that Defendant Boone was not physically positioned to have "press[ed]" his penis against Plaintiff's buttocks. *See* Video Ex. When Defendant Boone caught up to Plaintiff after Plaintiff ran down the hall, the two were facing each other. *See id.* When the two fell to the floor, Plaintiff landed face-first on top of Defendant Boone. *See id.* Plaintiff essentially was straddling Defendant Boone, but there was nothing sexual about the encounter. *See id.* On the video, Defendant Boone can be seen flailing his legs around attempting to release himself from underneath Plaintiff. *See id.* Even if Plaintiff felt something "hard" that he presumed was Defendant Boone's penis, Plaintiff points to no evidence showing Defendant Boone "engaged in a sexual act with [Plaintiff] . . . for [his] own sexual gratification, or for the purpose of humiliating, degrading, or demeaning [Plaintiff]." *See DeJesus*, 14 F.4th at 1196. On the contrary, the video evidence shows that Defendant Boone was in a defensive, submissive position during the short time he and Plaintiff were struggling on the floor. *See* Video Ex. If anyone was humiliated or degraded from the incident, it was Defendant Boone, not Plaintiff.

As to the claim against Defendants Montague and Norton, Plaintiff does not clearly state in his Amended Complaint when they allegedly kicked him or where in the prison the incident occurred. *See* Am. Compl. at 11. He suggests it occurred after he was carried out of his wing to be taken to the decontamination shower. *See id.* The video evidence does not document that transition. *See* Video Ex. Plaintiff does not clarify his allegations against Defendants Montague and Norton in his Response to the FDC's Motion. *See generally* Pl. FDC Resp. He does not repeat in his Response that Defendants Montague or Norton kicked him, *see id.*, and the video evidence does not show any officer kicking him, *see* Video Ex. Plaintiff's unsworn, unsubstantiated allegations that Defendants kicked him are insufficient to carry his burden in overcoming a defense of qualified immunity.

In his Response, Plaintiff seems to suggest the "attack" occurred when he "was picked up and carried away." *See* Pl. FDC Resp. at 1. Given he cites to a provision of the FAC dealing with carrying inmates, the Court construes his argument to be that Defendants did not follow protocol or procedure in executing the "four-man carry." *See* Pl. FDC Resp. at 1, 3. As already noted, *see supra* note 8, a prison official's violation of policy or state law is not actionable as a constitutional violation under § 1983. Thus, assuming Defendant Norton (who was the only Defendant who physically carried

Plaintiff) executed the "four-man carry" improperly, or Defendant Montague saw that officers were violating procedures, such conduct does not amount to an Eighth Amendment violation.

Finally, Plaintiff's claim against Warden Polk necessarily fails because there was no underlying constitutional violation. *See Mann*, 588 F.3d at 1308 (explaining that liability against a supervisor for the acts of a subordinate depend on an underlying constitutional violation by the subordinate; if the underlying claim fails, the claim against the supervisor fails). To the extent Plaintiff claims Warden Polk failed to separate him from Defendant Boone after Plaintiff submitted a PREA complaint, Plaintiff does not allege or present evidence showing Warden Polk was "subjectively aware" that Plaintiff was at "substantial risk of serious harm" but failed to respond "reasonably to the risk." *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Indeed, the FDC Defendants submit evidence showing Plaintiff submitted a PREA complaint two days *after* the November 11, 2021 incident, *see* FDC Ex. B, and Plaintiff offers nothing but uncorroborated accusation to contradict the FDC's evidence, *see* Pl. FDC Resp. at 2 (claiming the "written version" of his PREA complaint "has clearly been tampered with"). For the reasons stated, the FDC Defendants' Motion will be granted.

22

Accordingly, it is now

**ORDERED:**

1.     Defendant Selph's Motion for Summary Judgment (Doc. 76) is

**GRANTED**.

2.     The FDC Defendants' Motion for Summary Judgment (Doc. 78) is

**GRANTED**.

3.     The **Clerk** is directed to enter judgment in favor of Defendants,

terminate any motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of May

2025.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Arsenio Decord Stewart
Counsel of Record

23